### DAVID R. MAUPIN *v.* JAMES TURLEY, ET AL.

[Abstract Kentucky Law Reporter, Vol. 5—606.]

**Evidence of Existence of Trust.**

Land paid for by one who enters and holds possession for many years, the title being held in the name of another, is not subject to the demands of creditors of the holder of the record title, in case where the evidence establishes that the debtor holding such record title really has no interest in the property.

### APPEAL FROM POWELL CIRCUIT COURT.

January 24, 1884.

OPINION BY JUDGE PRYOR:

The counsel for appellant are mistaken in saying that the appellees by way of defense in their answer allege that the conveyance to Turley was made to enable their ancestor to avoid the claims of creditors. While the proof conduces to show that such was the fact, the answer relies on the statute of limitations under a trust on the part of Turley, who it is claimed held the land for Pettitt. That Pettitt paid for the land there is but little doubt, and from the year 1858, and perhaps from the year 1855, up to the year 1876 Pettitt and his heirs or children were in the actual possession of the land, using it as their own, making lasting and valuable improvements, and Turley receiving no compensation whatever in the way of rents or deriving any benefits from it whatever. A period of sixteen or seventeen years intervened with these parties in possession, and no profits were realized by Turley from the land, or claim made against either the ancestor of appellees or the appellees until that action was instituted by the creditors of Turley; and in fact none has as yet been made by Turley except through his creditors. While fraud on the part of Turley and Pettitt ought not to protect them against the creditors of either, still this fraud if practiced was more than fifteen years before the land was purchased by appellant, a creditor of Turley, and with

full knowledge that these appellees were in possession and not only so, but with actual knowledge of their claim before he bought the land.

It is unreasonable to suppose from the relations between Turley and Maupin or their families, and the fact that Turley is seeking to have this debt made out of the land as the proof clearly indicates, that appellant was ignorant of the claim of Pettitt or his children, and is to be regarded in the light of an innocent purchaser. The transactions between Pettitt and Turley were numerous and unsettled. They were merchandising in partnership, and from the weight of the testimony Turley was largely indebted to Pettitt, although Turley produces a note on Pettitt for nearly $2,000. The testimony is that this note was regarded as paid, by Turley himself, and that when the attempted settlement of their partnership was made Turley declined to complete it, and was really in debt to the appellee's intestate. It is plain that Turley could not recover this land, and while the appellant as a creditor of Turley may occupy a better position, after the lapse of more than fifteen years, with a constant and continued use of the land by appellees, it is too late for the creditor to assert his claim, and particularly when he has notice of the manner of the holding before he becomes the purchaser.

It is insisted, however, that the widow of Pettitt some ten years before this suit was brought took under Turley by signing an agreement or lease by which she recognized Turley as the landlord and herself as the tenant. The proof clearly shows that when this was done the children, as well as their mother, were on the land claiming it as their property, and the latter becoming angry with one of her sons threatened to surrender to Turley, and seems to have signed the writing upon which the creditors are relying in this case. There is proof as to the widow of Pettitt being a sensible business woman on the one side, and on the other, of but little business capacity; and this writing, when considered with the other facts in the case, shows that Turley had anticipated this claim of the children, and the writing was resorted to for the purpose of defeating it. The relinquishment of the widow, if made, could not affect the rights of those invested with the title acquired by reason of the possession of their ancestor.

Turley, claiming to be the owner of the land, might very readily

have obtained from Pettitt some writing evidencing the manner of his holding, and there is nothing in this record showing his ability pecuniarily to furnish Pettitt and his children a support and maintenance on this land for seventeen years, nor any such relation between them as would prompt him to display such liberality towards them. It is true they were partners in business, but according to the testimony Turley was indebted to Pettitt and not Pettitt to Turley by reason of this partnership; so there is nothing in this branch of the case for Turley, but it sustains the presumption that Pettitt had paid for the land and not Turley. Johns states that Pettitt purchased the land of him and that Turley gave him the reasons why the deed was made to Turley. While there is a direct conflict in the testimony as to the ownership of this land, and as to what Pettitt and Turley each said about it, there is the use and occupancy of the land for such a period as settles the issues beyond controversy. That it was Pettitt's land and not Turley's we think is clear.

There is evidence showing that Turley paid some of the taxes, and then again evidence that Pettitt or his family furnished the money, or repaid Turley; and we think the execution of the writing by the widow was obtained by Turley to strengthen what he regarded as a doubtful claim, and should not be permitted to divest either the widow or children of Pettit of title.

The judgment below is therefore *affirmed*.

*Reid & Stone and W. H. Holt, for appellant.*

*H. C. Lilly, for appellees.*